# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TOBY LANGENKAMP,

          Petitioner,

     -vs-

WARDEN, Allen Correctional Institution,

          Respondent.

:

:

:

:

Case No. 3:09-cv-201

Magistrate Judge Michael R. Merz

---

## DECISION AND ORDER

---

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254. On the Court's Order, the Warden filed an Answer (Doc. No 9) and Petitioner filed a Reply (Doc. No. 10). At Petitioner's request, the case was orally argued on December 9, 2009.[1] Petitioner seeks to set aside his convictions on two counts of unlawful sex with a minor and the resulting eight-year imprisonment sentence.

The parties have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) and the case has been referred on that basis (Doc. No. 8).

---

[1]This was oral argument on the record, not an evidentiary hearing as provided in Rule 8 of the Rules Governing § 2254 Cases. No evidentiary hearing was sought in the case.

# Procedural History

In 2006 Petitioner Toby Langenkamp was indicted by the Shelby County Grand Jury in Case No. 06-CR-075 on two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) and one count of rape in violation of Ohio Rev. Code § 2907.02. Later in 2006, in Case No. 06-CR-138, he was indicted on three counts of unlawful sexual conduct with a minor.

After negotiations, the Petitioner and the State entered into a plea agreement which is the subject of this litigation. An undisputed part of the agreement was that Petitioner would plead no contest to one count of unlawful sexual conduct with a minor in each case. He did so and then was, after presentence investigation, sentenced to four years' incarceration on each count with the terms to be served consecutively.

Petitioner took a direct appeal to the Shelby County Court of Appeals, raising the following assignments of error:

> 1. The Trial Court Erred in Adjudicating Mr. Langenkamp a Sexual Predator.
>
> 2. The Trial Court Erred in Accepting the No Contest Plea and Finding Mr. Langenkamp Guilty, and Sentencing Him to Two Consecutive Terms.

The Court of Appeals affirmed the convictions and sentence. Mr. Langenkamp then sought review in the Ohio Supreme Court, raising the following propositions of law:

> 1. A Determination of Whether a Sex Offender Is to Be Classified as a "Sexual Predator" must Be Based on Sufficient Admissible Relevant and Competent Evidence Admitted at an Evidentiary Hearing Where the Burden of Proof Is on the State to Establish the Same by Clear and Convincing Evidence.

2. The Trial Court May Not Simply Reject Out-of-hand a Qualified Expert Clinical Psychologist's Evidence, to a Reasonable Professional Certainty, That the Offender Suffers from a Severe Brain Injury and Psychosis, Each of Which Is Treatable to Prevent Recidivism.

3. The Court of Appeals Erred in Affirming the Trial Court's Acceptance of a No Contest Plea as Voluntary and Lawful When the Court of Appeals Was Advised That the Issue Was Not Ripe since the Trial Court Was Holding an Evidentiary Hearing on the Defendant's Motion to Withdraw the Plea under Cr. Rule 32.1.

4. The Court of Appeals Erred in Affirming the Trial Court's Accepting a Plea of No-contest Without Making Certain That a Prior Plea of Not Guilty by Reason of Insanity Was Properly Withdrawn.

The Ohio Supreme Court declined to exercise its jurisdiction to review the conviction.

While the direct appeal was still pending, Mr. Langenkamp filed a petition for post-conviction relief, a motion to withdraw the no contest pleas, a motion for evidentiary hearing, and a motion for recusal of the trial judge who had taken the pleas and imposed sentence. After Judge Schmitt recused himself, the evidentiary hearing was held by Judge Hein, who denied the petition and motion to vacate on January 22, 2008. Mr. Langenkamp filed a motion for reconsideration and an appeal in which he pled the following assignments of error:

1. The Trial Court Prejudicially Erred in Failing to Allow the Defendant to Withdraw His Plea of No Contest in this Matter on the Ground That He Did Not Waive His Rights and Enter His Pleas Voluntarily, Knowingly, and Intelligently Because He Did So Based on the Ineffective Assistance of Counsel Who Provided Erroneous Advice That the Waiver Was Appropriate Because the Defendant Had a Plea Agreement with the State Court and for Concurrent Sentences.

2. The Trial Court Prejudicially Erred in Failing to Allow the Defendant to Withdraw His Plea of No Contest Because the Undisputed Evidence Was That the Prosecutor Promised to Remain Silent on the Issue of Sentencing in Spite of His Promise Made a Recommendation to the Judge's Staff.

3. The Trial Court Prejudicially Erred in Failing to Allow the Defendant to Withdraw His Plea of No Contest Because the Evidence at the Hearing Clearly Demonstrated That the Promise of Concurrent Sentences Was a Significant Inducement for the Defendant to Waive His Rights and Enter His Plea of No Contest Such That it Was a Manifest Injustice to Not Permit the Defendant to Withdraw His Plea When the Court below Found There Was No Enforceable Contract with the State and Court for Concurrent Sentences.

4. Based on Assignments 1 Through 3, the Denial of the Motion to Withdraw Violates the Defendant's Constitutional Rights under the Fifth and Sixth Amendments to the United States Constitution and Ohio Constitutional Counterparts.

The Court of Appeals affirmed the judgments and Mr. Langenkamp appealed further to the Ohio

Supreme Court, raising the following propositions of law:

1. Where a Defendant's Waiver of Fifth and Sixth Amendment Constitutional Rights and Change of Plea to No Contest Is Based on Erroneous Advise from Counsel about the Terms of the Plea Agreement, it Is Not Voluntarily, Knowingly, and Intelligently Made, Despite Contradictory Language in the Court's Written Form.

2. Where a Defendant Waives Fundamental Rights under the Fifth and Sixth Amendment to the United States Constitution and Comparable Ohio Constitutional Provisions, Based on or Induced by Erroneous Advice of Counsel Concerning Crucial Terms of a Negotiated Plea Agreement, the Defendant's Constitutional Right to Effective Advice of Counsel under the Sixth Amendment Has Been Violated.

3. Where, as Part of a Negotiated Plea Agreement, the Prosecution Agrees to Remain Silent on Sentencing, but States in Open Court, That it Made its Recommendation to the Judge, the Plea Agreement Is Breached, the Waiver of Rights Is Invalid, and the Plea must Be Withdrawn and the Sentence Vacated.

4. Where a Defendant Argued in a Memorandum in Support of a Motion And/or Petition in the Trial Court, That the Prosecution Breached the Plea Agreement, the Argument Is Preserved for Purposes of Appeal Even If the Argument Was Not the Defendant's Central or Main Argument in the Trial Court.

The Ohio Supreme Court declined to exercise jurisdiction and Mr. Langenkamp filed the instant habeas corpus petition.

Petitioner, represented by the same attorney who represented him throughout the state court proceedings, pleads three grounds for relief.

> **Ground One:** Waiver of Fifth and Sixth Amendment constitutional rights and change of plea to no contest based on erroneous advise [sic] of counsel about the terms of the plea agreement, was not voluntarily, knowingly, and intelligently made.

**Supporting Facts:** On June 15, 2007, just before the trial was scheduled on June 18, 2007, Mr. Daniel J. O'Brien, on behalf of Mr.Langenkamp, and Mr. Ralph Bauer, Shelby County Prosecutor, on behalf of the State of Ohio, negotiated a plea agreement. Mr. Langenkamp insisted he was not guilty. His counsel sought a guarantee of concurrent sentences. Mr. Bauer explained the trial court's method for obtaining approval of the plea agreement prior to sentencing. This involved a back channel through the bailiff to the Judge and then back through the bailiff to counsel. The assurance of concurrent sentences was the *sine qua non* of the plea agreement. The bailiff returned and stated sentences would be concurrent, according to Mr. Langenkamp's counsel. Mr. Langenkamp was told by counsel that the agreement for concurrent sentences was in place. The prosecutor agreed to remain silent on the issue of sentencing. Mr. Langenkamp's attorney testified, "That advice was to plead no contest in return for a guarantee that we would not have consecutive sentence." This was substantiated by other witnesses. Mr. Langenkamp testified, 'So, you know, I agreed, you know, with the understanding that we had concurrent sentences ..... He also testified, "If the promise had not been made to you of concurrent sentences, that you would have tried this case; is that an accurate statement? A. [Mr. Langenkamp) That is an accurate - w-- we would have taken it to trial, it would have gone to trial."

> The prosecutor acknowledged that he agreed to remain silent on sentencing. He admitted stating at the sentencing hearing that he "made our recommendation to your staff, Your Honor". Mr. Langenkamp testified that he entered the no contest plea, "Because of knowing that we already came to an agreement of concurrent sentences." He stated, "We already knew what that [sentence] was gonna be." "Q. Was It your understanding that the State had guaranteed you a sentence that would not exceed five years no matter what? A. Yes, sir. *** Q. And that's why you entered the plea? A. Yes, sir." His parents confirmed his belief.
>
> Nevertheless, the trial court concluded that there was no valid agreement for concurrent sentences. "The Court concludes that there was no contract or binding agreement for a particular sentence." The

Court of Appeals found that Mr. Langenkamp has waived his rights and pled no contest based on erroneous legal advice, but held he was not justified in following his own attorney's advice.

**Ground Two:** Where a defendant waives fundamental rights under the Fifth and Sixth Amendments to the U.S. Constitution based on or induced by erroneous advice of counsel concerning crucial terms of a negotiated plea agreement, the defendant's constitutional right to effective advice of counsel under the Sixth Amendment has been violated.

**Supporting Facts:** see the facts under Ground One. In addition, the Shelby County Court of Appeals accepted the view of the record that Mr. Langenkamp waived his rights and entered his plea relying on the erroneous advice of his counsel that a plea agreement was in place for concurrent sentences. It stated "As such, O'Brien's representation to Langenkamp must be labeled for what it was – erroneous advice." Nevertheless, the Court of Appeals imposed an additional burden that Mr. Langenkamp's reliance must be justified and it was not. The Court failed to rule on the ground that since the plea was entered in reliance on counsel's erroneous advice, the plea was based on ineffective assistance of counsel.

**Ground Three:** Where, as a part of a negotiated plea agreement, the prosecution agrees to remain silent on sentencing, but states in open court, that it made its recommendation to the judge, the plea agreement is breached, the waiver of rights is invalid, and the plea must be withdrawn and the sentence vacated.

**Supporting Facts:** see facts set forth under Ground One above.

(Petition, Doc. No. 1, at 5-9.)

In his Answer, the Warden defends Grounds One and Two on the merits, but asserts that Petitioner procedurally defaulted on his Third Ground for Relief by never presenting it to the state trial court (Answer, Doc. No. 9). Petitioner limits his Reply to arguing that the Shelby County Court of Appeals was manifestly in error in finding that he did not raise his Third Ground in the trial court (Reply, Doc. No. 10).

**Analysis**

**Grounds One and Two**

In his First and Second Grounds for Relief, Petitioner argues in slightly different words that his no contest pleas were not knowingly, intelligently, and voluntarily made because they were induced by the erroneous representation by counsel that there was a guarantee of concurrent sentences.

Although at points during the state court proceedings Petitioner was arguing that he had an enforceable plea agreement for concurrent sentences, that argument is not made here. Instead, the focus is entirely on vacating the pleas.

The Warden appears to concede that this claim was fairly presented to and decided by the state courts; no claim of lack of fair presentation is made in the Answer. Instead, the Warden relies on the language of § 2254(d)(1) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The Warden asserts, that is, that the state courts' decision on the claim that the pleas are not valid because they were induced by erroneous advice of counsel, is neither contrary to nor unreasonable application of United States Supreme Court decisional law, clearly determined as of the date the state courts decided the case.

The state court decision which must be examined is that of the Shelby County Court of Appeals in its review of the denial of the post-conviction petition and denial of the motion to withdraw the pleas. It is the relevant decision for habeas corpus purposes because it is the last reasoned state court decision, as opposed to the denial of review by the Ohio Supreme Court. Where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797 (1991). The district court must look at the last state court disposition providing reasons for the decision. *Joseph v. Coyle,* 469 F.3d 441, 450 (6th Cir. 2006); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991). A state court's noncommittal denial of review is not controlling. *McBee v. Abramajyts*, 929 F.2d 264, 267 (6th Cir. 1991).

The Shelby County Court of Appeals held as follows:

> [*P10] In his first and third assignments of error, Langenkamp argues that he entered his no contest plea because his attorney told him that there was an agreement for concurrent sentences. Langenkamp argues that since the trial court found that there had been no agreement for concurrent sentences, the trial court abused its discretion when it failed to find that the no contest plea should be withdrawn due to erroneous advice from counsel. Langenkamp maintains that erroneous advice from counsel about sentencing, which induces a defendant to waive his right to jury trial, renders trial counsel's assistance ineffective. Further, Langenkamp argues that where the promise of concurrent sentences induces a plea, "the failure of that representation renders the plea involuntary." (Appellant's Brief at 13).

> [*P11] The trial court did not err in finding that Langenkamp failed to establish a manifest injustice; and therefore, it did not abuse its discretion in overruling his motion to withdraw and post-conviction motion to vacate. Our conclusion rests upon a five-fold analysis. First, we will examine the trial court's applicable findings of fact and conclusions of law. Second, we will examine the record supporting the trial court's judgment. Third, we will examine the pertinent case law involving erroneous sentencing advice from counsel. Fourth, we

will apply the pertinent rule of law to the facts of this case. Fifth, we will discuss the policy grounds underlying our analysis.

1. Trial Court's Findings of Fact & Conclusions of Law

[*P12] In its judgment entry, the trial court first found that there was not an underlying agreement for concurrent sentences. The trial [court] stated:

> In an effort to get a sense from Judge Schmitt[2] about the length of incarceration, especially whether the sentences would be run concurrently or consecutively, [defense counsel] enlisted the services of the Bailiff, Vic Elliot. By agreement of counsel, Mr. Elliot telephoned Judge Schmitt about the Defendant's inquiry about whether the sentences would be served concurrently or consecutively; Mr. Elliot also expressed the Defendant's desire for a concurrent sentence. By subsequent phone call, Mr. Elliot advised both attorneys that Judge Schmitt had stated that the sentences would be served concurrently if there was nothing in the pre-sentence investigation.

(Jan. 22, 2008 JE at 3). Based on this finding of fact, the trial court found that no agreement existed for concurrent sentencing; rather, the trial court judge's statements were merely "pre-trial observations and impressions," indicating "what the Judge was willing to consider." (*Id.* at 5). In support of this conclusion, the trial court noted that if an agreement existed, as Langenkamp argued, then Crim. R. 11(F) required that such an agreement be stated on the record during the change of plea hearing. The trial court then noted that no agreement was alleged by the defendant, the judge, or either attorney during the June 18, 2007 plea colloquy. (*Id.*)

[*P13] Furthermore, the trial court found that the written change of plea petition indicated that: (1) the maximum period of imprisonment was 10 years; (2) "no officer of the Court or any attorney has promised or suggested that [the Defendant] will receive a lighter sentence, probation, or any other form of leniency in exchange for my No Contest plea…"; (3) there "is no underlying agreement upon which this plea is based…"; and (4) the sentence to be imposed "is

---

[2]The original trial judge's name is variously spelled "Schmitt" and "Schmidt" in the state court record. the correct spelling is "Schmitt." 2002 Martindale Hubbell Legal Directory.

solely a matter within the control of the Judge." (*Id.,* citing Doc. No. 84). The trial court thereafter found that the trial judge had substantially complied with Crim.R. 11, 32(A), & 32.2. (*Id.* at 7).

[*P14]  The trial court then determined that Langenkamp had not demonstrated manifest injustice based on its previous findings, and because the plea agreement protected Langenkamp from three more serious charges, one additional charge, and a possible forty-five (45) year sentence. (*Id.*) The trial court also noted that Judge Schmitt had specifically found that Langenkamp suffered no injustice by an eight (8) year sentence. (*Id.*, citing Aug. 20, 2007 Tr. at 70-72).

[*P15]  The trial court also found that "even if the Defendant did receive confusing advice from counsel," Langenkamp failed to establish a manifest injustice because: (1) the record set forth the objective terms of the plea agreement; (2) the record indicated that the sentencing judge possessed sole sentencing discretion; and (3) the defendant's motion to withdraw  was based upon a change of heart with regard to his culpability or the propriety of his sentence. (*Id.* at 8-9.)

[*P16]  For all these reasons, the trial court overruled Langenkamp's motion to withdraw and motion for post-conviction relief.

2. The Record

[*P17]  The trial court's finding that no agreement for concurrent sentencing existed is supported by the record. Vic Elliot, the judge's bailiff, testified that prosecutor Bauer informed him that Langenkamp's attorney, O'Brien, and he may have a plea agreement worked out, and Bauer asked him if he would "contact the judge to see what his attitude would be on sentencing." (Dec. 14, 2007 Tr. at 103.)  Elliot testified that:

> Judge Schmidt advised me that he didn't like to discuss his sentencings with anybody; but if they got a plea agreement worked out, that he would go along with concurrent sentencing if that's--on concurrent sentencing. If nothing comes out in the PSI, then he would say that he'd probably run the sentences concurrent.

(*Id.* at 104-05; see also, *id.* at 120). Elliot testified that he relayed this exact information to both Bauer and O'Brien via a three-way phone call. (*Id.* at 121). Bauer verified Elliot's testimony concerning the judge's comments. (*Id.* at 127-29). As such, the trial court found

Elliot's testimony credible and also found that Langenkamp's allegations that the representation about concurrent sentencing came from the prosecutor was not supported by the evidence. (Jan. 22, 2008 JE at 3). Because the trial court had competent, credible evidence Judge Schmitt would probably run the sentences concurrent assuming that nothing negative would be in the PSI, we find that the trial court's finding that no agreement existed is supported by the record.

[*P18] We also find that the record supports the trial court's finding that neither party mentioned the existence of an agreement for concurrent sentences during the change of plea hearing. (Jun. 18, 2007 Tr.). Furthermore, the record supports the trial court's finding that Judge Schmitt substantially complied with Crim.R. 11 and followed Crim.R. 32(A) and 32.2. (*Id*.); (*Id*. at 11). Finally, we find that the trial court's findings of fact with regard to the declarations appearing in the written plea of no contest are also supported by the record. (Doc. No. 84).

### 3. Whether Counsel's Erroneous Advice Concerning Sentencing Created a Manifest Injustice

#### a. Erroneous Advice or Mere Speculation

[*P19] The trial court characterized O'Brien's advice to Langenkamp as "speculation regarding the likely sentence." (Jan. 22, 2008 JE at 8) (emphasis added). The trial court, however, also concluded that "even if [Langenkamp] did receive confusing advice from counsel," manifest injustice does not "ipso facto result from counsel's erroneous advice concerning the sentence that will be imposed." (*Id*. at 8, citing *State v. Blatnik* (1984), 17 Ohio App.3d 201, 203, 17 Ohio B. 391, 478 N.E.2d 1016). The trial court also found that the testimony of counsel for both sides was credible, and specifically did not find that O'Brien's advice was erroneous. (*Id*.). Although we agree with the trial court's citation of law, we disagree with its characterization of O'Brien's advice as mere speculation.

[*P20] Although it was clear, based on the testimony of both Elliot and Bauer, that the judge's sentencing comments were both conditional and speculative, it was just as clear that O'Brien misrepresented the judge's comments to Langenkamp. O'Brien testified he told Langenkamp that "the sentences are guaranteed concurrent." (Dec. 14, 2007 Tr. at 19). O'Brien further testified:

* * * my client believed that. He -- he believed it

because I told him it. * * * I told my client, it's concurrent; and -- as a result of me telling my client that, on June 18th, the day of the trial, we came in and pled * * * I misled my client because I told him it would be concurrent. And I know what I heard. But he believed it, he was no party to any of these conversations, he took my word for it as an officer of the court. I -- I gave him the best that I had at the time, and Dr. Bromberg was there when I -- when -- while I was still on the phone when we got the announcement from the judge. If it had been anything other than what I'm tellin' you right now, if that --that conditional language that people are tellin' you was part of it, if it had been in actuality a part of it at the time, no plea would have entered on June 18. We would have been in a trial. So I'm adamant -- I hope this Court realizes we are adamant on that particular issue, and it became the most crucial issue in this case. My client never should have faced a sentence that exceeded five.

(*Id*. at 21-23). Furthermore, the trial court found that O'Brien's testimony was credible. (Jan. 22, 2008 JE at 8) ("the Court has no reason -- in this matter or any other professional dealing with both attorneys -- to disbelieve either attorney.").

[*P21] O'Brien's testimony was also verified by Dr. David Bromberg, the psychologist that examined Langenkamp. (Dec. 14, 2007 Tr. at 41-42). Dr. Bromberg testified that he was present when O'Brien told Langenkamp that there was a deal, and that, based on O'Brien's representations, he thought that Langenkamp was to be sentenced concurrently for a total of five years. (*Id*. at 48-50). Dr. Bromberg also testified that Langenkamp was reluctant to plea because he insisted upon his innocence, but that he ultimately agreed to plea. (*Id*. at 47). Dr. Bromberg further testified that he was shocked when Langenkamp was sentenced consecutively because the sentence did not reflect the agreement reached. (*Id*. at 51).

[*P22] Langenkamp testified that his wife encouraged him to take a plea deal if he would be sentenced concurrently. (*Id*. at 65). Langenkamp further testified that he entered his plea based on the fact that he was to be sentenced concurrently and would face, at most, five years imprisonment. (*Id*. at 66-67). Langenkamp's mother, Mary Ann Langenkamp, also testified that her son had told her that he

would be sentenced "five years concurrent sentences for both crimes" in exchange for his plea. (*Id.* at 92). In support of his motion to withdraw, Langenkamp also submitted affidavits from Dr. Bromberg, his wife, and himself, all indicating that he was to be sentenced concurrently. (Doc. Nos. 115, 117, 123).

[*P23] Contrary to the trial court's characterization, O'Brien's testimony indicates that he did not "speculate" as to Langenkamp's sentence, but rather, "guaranteed" the sentences were concurrent. (Jan. 22, 2008 JE at 8); (Dec. 14, 2007 Tr. at 19). Since the trial court found both O'Brien's testimony regarding his representations to Langenkamp and Elliot's testimony regarding Judge Schmitt's sentencing comments credible, the only logical conclusion is that O'Brien misrepresented Judge Schmitt's comments (via Elliot) to Langenkamp. As such, O'Brien's representation to Langenkamp must be labeled for what it was--erroneous advice.

b. When Erroneous Sentencing Advice Creates a Manifest Injustice

[*P24] Since the trial court's conclusion that Langenkamp failed to establish a manifest injustice was based, in part, on its incorrect characterization of O'Brien's advice as mere speculation, a further analysis is required.

[*P25] Whether a manifest injustice exists for purposes of a post-sentence withdrawal of guilty or no contest plea by virtue of counsel's sentencing advice depends upon the nature of that advice. The case law indicates a clear demarcation between counsel's sentencing advice that is a "good faith estimate" or "speculative," and counsel's erroneous representation of a promised sentence. The former type of advice which a defendant relies upon does not create a manifest injustice necessary for a post-sentence withdrawal of guilty or no contest plea. *State v. Blatnik* (1984), 17 Ohio App.3d 201, 203, 17 Ohio B. 391, 478 N.E.2d 1016, citing *U.S. v. Hawthorne* (C.A. 3, 1974), 502 F.2d 1183, cert. denied 429 U.S. 894, 97 S. Ct. 254, 50 L. Ed. 2d 177 (1976); *State v. Testerman* (Aug. 17, 2001), 1st Dist. Nos. C-010040, B-0006181, at *3, 2001 Ohio App. LEXIS 3605, citations omitted; *State v. Ransom* (Aug. 12, 1999), 10th Dist. No. 98AP-1613, at *3, 1999 Ohio App. LEXIS 6527; *State v. Lambros* (1988), 44 Ohio App.3d 102, 103-04, 541 N.E.2d 632. The latter type of advice which a defendant relies upon may create a manifest injustice, and thus, may require a post-sentence withdrawal of plea. *Testerman*, *supra, citing State v. Longo* (1982), 4 Ohio App.3d 136, 140, 4 Ohio B. 228, 446 N.E.2d 1145, quoting *U.S. ex*

*rel. Elksnin v. Gilligan* (S.D.N.Y. 1966), 256 F.Supp. 244, 249, citing *U.S. ex rel. Thurmond v. Mancusi* (E.D.N.Y. 1967), 275 F. Supp. 508, 517. Courts have noted this same distinction between types of advice given by counsel in the context of post-conviction petitions as well. *See, e.g., State v. Pahl,* 3d Dist. No. 5-02-65, 2003 Ohio 3181, P20; *State v. Wells* (Nov. 24, 1999), 2nd Dist No. 17521, 1999 Ohio App. LEXIS 5559; *State v. Post* (Jan. 2, 1997), 9th Dist. No. 96CA006399, 1997 Ohio App. LEXIS 4; *State v. Pecina* (Jan. 14, 1994), 6th Dist. No. 93OT025, 1994 Ohio App. LEXIS 44; *State v. Maloney* (Nov. 7, 1983), 12th Dist. No. CA82-10-105, 1983 Ohio App. LEXIS 13989; *State v. Lindsey* (Feb. 4, 1981), 1st Dist. No. C-800076, 1981 Ohio App. LEXIS 12549.

 [*P26]  This case deals with the latter type of advice--the "promised sentence." The court in Testerman stated that in order to demonstrate a manifest injustice by virtue of this type of erroneous advice, the defendant must establish that: (1) defense counsel mistakenly represented to him/her what has been promised by way of a sentence; and (2) the erroneous representation played a substantial part in his/her decision to plead guilty. 1st Dist. Nos. C-010040, B-0006181, 2001 Ohio App. LEXIS 3605 at *9, citations omitted. Other courts, however, have indicated that the defendant's reliance upon counsel's erroneous representation must also be justified. For example, the court in *State v. Garn* stated:

> As to appellant's claim that he received erroneous advice from counsel regarding the sentence to be imposed by the trial court, the record indicates appellant understood the maximum possible sentence, that no promises of a particular sentence had been made to him and that appellant knowingly and voluntarily entered his guilty pleas.

5th Dist. No. 02 CA 45, 2003 Ohio 820, P30. In *State v. Jackson,* the court likewise stated that, "regardless of what appellant may have been told by his attorney, appellant was aware of the potential sentences he faced." 5th Dist. Nos. 04CA-A-11-078, 04CA-A-11-079, 2005 Ohio 5173, P25. In State v. Parker, the court stated: "[e]ven if appellant's attorney did indicate that appellant would not receive the maximum sentence possible, appellant could not have reasonably relied upon his attorney's advice over the judge's statement." (Dec. 30, 1997), 4th Dist. No. 96CA35, 1997 Ohio App. LEXIS 6055 at *7,. See also, *State v. Leeper*, 5th Dist. No. 03 CA 35, 2004 Ohio 5362, PP13-30; *State v. Yearby* (Jan. 24, 2002), 8th Dist. No. 79000, at *3, 2002 Ohio App. LEXIS 199; *State v. Sharp* (Jun.

22, 1993), 10th Dist. No. 92AP-1185, at *3, 1993 Ohio App. LEXIS 3215; *State v. Brondel* (Oct. 31, 1988), 2nd Dist. No. 87-CA-51, at *3, 1988 Ohio App. LEXIS 4390 . Similarly, federal courts have rejected defendants' claims that they unknowingly, involuntarily, or unintelligently entered pleas based on counsel's promised sentence where the defendant "could not have been reasonably justified in relying on any such promise." *Wojtowicz v. U.S.* (C.A. 2, 1977), 550 F.2d 786, 792, *citing Mosher v. Lavallee* (C.A. 2, 1974), 491 F.2d 1346, cert. denied, 416 U.S. 906, 94 S. Ct. 1611, 40 L. Ed. 2d 111 (1974); *U.S. ex rel. Curtis v. Zelker* (C.A. 2, 1972), 466 F.2d 1092, 1098. *See also, U.S. v. Bradley* (C.A. 11, 1990), 905 F.2d 359, 360; *Davila v. U.S.* (E.D.N.Y. 2008), No. 07-CV-1320, at *12, 2008 U.S. Dist. LEXIS 27063; *U.S. v. Gibbs* (D. Kan. 2007), No. 06-10231-02, at *5, 2007 U.S. Dist. LEXIS 50117. The cases finding that a defendant could not reasonably rely upon counsel's erroneous sentencing advice--and therefore, failed to establish a manifest injustice--are generally those where the defendant was informed about the possible sentences he/she faced during a Crim.R. 11 colloquy, in a written plea agreement, or both. See, e.g., *State v. Jackson*, 2005 Ohio 5173, PP24-26.

 [*P27]  After a review of the applicable case law, this Court holds that in order for a defendant to establish a manifest injustice sufficient for a post-sentence withdrawal of a guilty or no contest plea, a defendant must establish that: (1) defense counsel mistakenly represented what has been promised by way of a sentence; (2) the erroneous representation played a substantial part in his/her decision to plead guilty or no contest; and (3) he/she was reasonably justified in relying upon counsel's erroneous representation.

## 4. Whether Counsel's Erroneous Sentencing Advice Created a Manifest Injustice *Sub Judice*

 [*P28]  Applying our three-prong test and assuming prongs one and two, Langenkamp has failed to establish a manifest injustice because he was not reasonably justified in relying upon his counsel's erroneous representation. The written plea agreement specifically provided, in pertinent part:

> If you are pleading "no contest" and found guilty to multiple offenses, your sentences and fines could be ordered to be served concurrent (run together), or could be ordered to be served consecutive (one after the other). This means that if there are multiple offenses you face a maximum of 10 years and

$20,000 dollars in fines.

\* \* \*

13. I declare that no officer of this Court or any attorney has promised or suggested that I will receive a lighter sentence, probation, or any other form of leniency in exchange for my No Contest plea; and if anyone did make such a promise or suggestion, that I know that he or she had no authority to do so.

\* \* \*

I know that the sentence I will receive is solely a matter within the control of the Judge. I request leniency, but I am prepared to accept any punishment permitted by law which this Court sees fit to impose.
\* \* \*

\* \* \*

I OFFER MY PLEA OF NO CONTEST FREELY AND VOLUNTARILY AND OF MY OWN ACCORD WITH FULL UNDERSTANDING OF ALL MATTERS SET FORTH IN THE INDICTMENT/INFORMATION AND IN THIS PETITION.

(Doc. No. 84). During the change of plea hearing, the trial judge inquired as follows:

THE COURT: \* \* \* First of all, let me ask you this. Has anyone threatened you or promised you anything to get you to plead here this morning

THE DEFENDANT: No, Your Honor.

-THE COURT: Okay. And you understand the Court is not bound by any promises that may have been made to you about sentencing? Do you understand that

THE DEFENDANT: Yes, Your Honor.

\* \* \*

THE COURT: Okay. Now has your attorney explained everything and answered all your questions

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you satisfied with the advice he's given you

THE DEFENDANT: Yes, Your Honor.

\* \* \*

THE COURT: Okay. Now you're gonna be entering a plea to two charges here. Both of these are felony offenses of the third degree. Each one carries with it a possible term of up to five years in prison and a fine up to $10,000. Are you aware of the possible penalties you may be facing

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. * ** Now, your attorney has placed on the -- on the bench this document that you have signed. It's called a petition to enter a plea of no contest. Did you have an opportunity to go through this document

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about what's contained in this document

THE DEFENDANT: NO, Your Honor.

THE COURT: You're satisfied you understand it

DEFENDANT: Yes, Your Honor.

THE COURT: Mr. O'Brien, I'll ask you. Did you go through this document with your client, and are you satisfied that he understands it

MR. O'BRIEN: Your Honor, that is correct, and I've signed a -- a statement to that effect.

THE COURT: And you're satisfied that he understands it

MR. O'BRIEN: Yes, I'm satisfied.

* * *

THE COURT: Then lastly, I need to ask you, are you entering your pleas here this afternoon -- or this morning -- freely and voluntarily

THE DEFENDANT: Yes, Your Honor.

(Jun. 18, 2007 Tr. at 4-9). The record is clear that Langenkamp knew if any promise was made to him by any officer of the court or any attorney it was made without the authority to do so. (Doc. No. 84). The trial court also informed Langenkamp that it was not bound by any promises that may have been made to him. (Jun. 18, 2007 Tr. at 5). Under these circumstances, we cannot find that Langenkamp was reasonably justified in relying upon his counsel's erroneous representation that his sentences would be ordered concurrent. So, even assuming that Langenkamp established prongs one and two, he has failed to establish prong three; and therefore, Langenkamp failed to demonstrate manifest injustice.[4] As such, the trial court did not err in denying Langenkamp's motion to withdraw nor did it err in denying his motion to vacate.

FOOTNOTES

4 The Court notes that it is not clear whether Langenkamp established prong two--that counsel's erroneous representation played a substantial part in his decision to plead no contest. The trial court noted that "the Defendant has experienced a change in heart regarding either his culpability for the criminal conduct or the propriety of the sentence imposed upon him." (Jan. 22, 2008 JE at 9).

5. Policy Considerations & Manifest Injustice

[*P29]  "The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *State v. Ballard* (1981), 66 Ohio St.2d 473, 479-80, 423 N.E.2d 115.

[*P30]  Crim.R. 11(C) also creates a record by which an appellate court can determine if the pleas were entered voluntarily. *State v. Griggs,* 103 Ohio St.3d 85, 2004 Ohio 4415, 814 N.E.2d 51, P11. However, Crim.R. 11(C)'s ultimate purpose "is to insure that there was a voluntary, knowing, and intelligent waiver of the constitutional rights abandoned by a plea of guilty, and of the nature and extent of the punishment involved by such a plea." *State v. Branham* (July 22, 1987), 3d Dist. No. 11-86-3, 1987 Ohio App. LEXIS 8154 at *5. As such, a trial court's adherence to Crim.R. 11(C), absent any indicia of coercion, creates a presumption that the defendant's plea was entered knowingly, voluntarily, and intelligently. *State v. Ogletree*, 2nd Dist. No. 21995, 2008 Ohio 772, P7, citing *State v. Ferbrache*, 6th Dist. No. WD-06-042, 2007 Ohio 746; *State v. Smith* (Dec. 4, 1998), 11th Dist. No. 97-T-0164, at *2, 1998 Ohio App. LEXIS 5819; *State v. Hall* (Apr. 27, 1989), 8th Dist. No. 55289, at *1, 1989 Ohio App. LEXIS 1602.

[*P31]  The trial court here complied with Crim.R. 11(C). At the change of plea hearing, the trial court specifically informed Langenkamp that each of the two offenses he pled to carried a five year sentence. (June 18, 2007 Tr. at 6). The trial court also asked Langenkamp if any promises had been made to him, and he replied "no". (*Id*. at 4-5). If there was an agreement for concurrent sentences, Langenkamp should have brought that to the trial court's attention during the Crim.R. 11 colloquy. The trial court judge also specifically stated that he was not bound by any promises made regarding sentencing. (Id. at 5). Under these circumstances, Langenkamp's tendered no contest pleas are presumed to have been made knowingly, voluntarily, and intelligently. The record of the Crim.R. 11 colloquy fails to indicate otherwise, and Langenkamp has failed to demonstrate otherwise.

[*P32]   For all these reasons, Langenkamp's first and third assignments of error are overruled.

*State v. Langenkamp*, 2008 Ohio 5308. 2008 Ohio App. LEXIS 4469 (Ohio App. 3rd Dist. Oct. 14, 2008).

28 U.S.C. § 2254(d)(1) was added to the habeas statutes by the Antiterrorism and Effective

Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). The Supreme

Court has elaborated on the standard for applying § 2254(d)(1):

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996]
> provides that, when a habeas petitioner's claim has been adjudicated
> on the merits in state-court proceedings, a federal court may not grant
> relief unless the state court's adjudication of the claim "resulted in a
> decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme
> Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court
> decision is contrary to this Court's clearly established precedents if
> it applies a rule that contradicts the governing law set forth in our
> cases, or if it confronts a set of facts that is materially
> indistinguishable from a decision of this Court but reaches a different
> result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3,
> 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court
> decision involves an unreasonable application of this Court's clearly
> established precedents if the state court applies this Court's
> precedents to the facts in an objectively unreasonable manner.
> *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19,
> 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

At oral argument, Petitioner asserted the outcome in the state courts was contrary to or an

objectively unreasonable application of *Santobello v. New York*, 404 U.S. 257 (1971), and *Brady*

*v. United States*, 397 U.S. 742 (1970).

It is clearly established that a conviction based on a guilty plea which is not knowing,

intelligent, and voluntary may be set aside in habeas corpus. *Tollett v. Henderson*, 411 U.S. 258

(1973). The determination of whether this plea was intelligently made depends upon the particular

facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v.*

*Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

It is likewise true that a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

The same standards apply in evaluating ineffective assistance claims in cases which resulted in a negotiated plea. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. *Hill*, 474 U.S. at 58.

The factual findings of a state court that a plea was proper generally are generally presumed to be correct. *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989), overruled on other grounds by *Parke v. Raley,* 506 U.S. 20 (1992). Whether a guilty or no contest plea is or is not voluntary is a mixed question of fact and law, but state court historical factual findings underlying the determination were entitled to a presumption of correctness under 28 U.S.C. §2254(d) even before the AEDPA. *Parke v. Raley*, 506 U.S. 20 (1992). Now they can be overcome only by a showing,

by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Shelby County Court of Appeals held that to prevail on his manifest injustice claim, Petitioner would have to prove that "(1) defense counsel mistakenly represented what has been promised by way of a sentence; (2) the erroneous representation played a substantial part in his/her decision to plead guilty or no contest; and (3) he/she was reasonably justified in relying upon counsel's erroneous representation."

The court concluded that defense counsel had indeed mistakenly represented that Judge Schmitt had promised concurrent sentencing. There is no basis in the record for overturning this conclusion. Indeed, at oral argument as he did in the evidentiary hearing before Judge Hein, Mr. O'Brien made it clear that, as far as his client was concerned, a guarantee of concurrent sentencing was the "*sine qua non*" of the plea agreement. From all the facts and circumstances, there is no doubt in this Court's mind that Mr. O'Brien told his client, in the presence of the client's parents and psychologist, that he had received such a guarantee.

From the testimony at the evidentiary hearing, it is also clear that giving such a guarantee would have been very uncharacteristic of Judge Schmitt. Both Mr. Bauer, the prosecutor, and Mr. Elliott, the bailiff, testified that Judge Schmitt kept sentencing to himself as a practice.[3]

As to whether Judge Schmitt gave a guarantee in this case, the only person who spoke directly with Judge Schmitt before a plea was agreed on was his bailiff who testified only that the judge said to him that the judge could probably sentence concurrently if nothing came up in the presentence investigation. Mr. Elliott also recalled telling that to Mr. Bauer and Mr. O'Brien. Mr.

---

[3]Mr. Bauer was quite familiar with Judge Schmitt's predilections, having practiced before him for nineteen years. (Evidentiary Hearing transcript, Ex. 52 to return of Writ, at 130.)

Bauer recalled it that way and Mr. O'Brien did not. Neither side called Judge Schmitt to testify at the evidentiary hearing. All of the other critical terms of the plea agreement were reflected in faxed letters between Bauer and O'Brien, but this term was not included. Whatever Judge Schmitt actually said to Elliott and Elliott said to Bauer and O'Brien, there plainly was sufficient evidence for Judge Hein to find that there was no plea agreement which included a commitment by the Court to concurrent sentencing. There is no evidence before this Court other than what was before Judge Hein, so it cannot be said that his finding was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The Shelby County Court of Appeals also assumed the second prong of its test, to wit, that Langenkamp substantially relied on Mr. O'Brien's advice. The court expressed some doubt on the point (see footnote four quoted in its opinion above), but this Court has no doubt on that score, given the testimony at the evidentiary hearing.

The Court of Appeals decided the case based on the third prong of its test. It concluded that Petitioner's reliance on Mr. O'Brien's representation was not justified, given all the facts and circumstances of the acceptance of the plea.

First of all, the facts and understandings set forth in the written plea agreement are completely at odds with any justified belief on Mr. Langenkamp's part that he was guaranteed concurrent sentencing. In signing the agreement, he represented to Judge Schmitt that he understood he could be sentenced to up to ten years in prison. Because the two crimes to which he was pleading were felony-3 level offenses, ten years would only be possible if he were sentenced to the maximum of five years on each count and those sentences were run consecutively, completely inconsistent with his stated belief that he could only do five years. Langenkamp also solemnly declared that no court

-23-

officer or attorney had promised him any particular sentence and that if they had done so, they were not authorized to do so.

In addition to the written plea agreement, there was also an oral plea colloquy with Judge Schmitt in which Petitioner again acknowledged that there had been no promises about sentencing and that he could be sentenced to the maximum of ten years. Mr. O'Brien represented to Judge Schmitt at the same hearing that he believed Mr. Langenkamp understood the terms of the plea agreement.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). When asked at the evidentiary hearing in post-conviction why he signed the written plea agreement and made the oral representations he did to Judge Schmitt when in fact he was relying on a supposedly guaranteed five-year sentence, Petitioner responded: "I was reciting the script of what is used within the courts of the no promises and the – how that is abided by law." (Evidentiary Hearing, Return of Writ, Ex. 52, at 79.) What Petitioner seems to be claiming is that it was perfectly acceptable to him to rely on what he understood was a promise from the judge and then deny to the same judge in open court that he had any understanding that such a promise existed because that is what the "script" called for.

As the Court of Appeals noted, the purpose of Ohio R. Crim. P. 11(C) is to create a complete record so that a court of appeals can determine whether a plea was entered knowingly, intelligently, and voluntarily. The purpose of the rule would be completely defeated if a defendant could claim

-24-

that it was all a sham, that he was playing a part and just following a script – saying whatever words were required to complete the process, whether or not they were true. Nothing in the constitutional law of plea bargaining requires this Court to countenance that way of proceeding. Indeed, most federal courts deny such claims without even hearing evidence. See *United States v. Stewart,* 198 F.3d 984 (7th Cir. 1999); *Cunningham v. Diesseln,* 92 F.3d 1054 (10th Cir. 1996); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand"); *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999)(on federal habeas by state prisoner, "[A] claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute [a basis for relief] when the court conducts a proper, clear, and thorough plea colloquy.").

The cited authority makes it clear that the Shelby County Court of Appeals decision was neither contrary to nor an objectively unreasonable application of clearly established United States Supreme Court precedent. Therefore Petitioner's first two Grounds for Relief will be dismissed with prejudice.

## Ground Three

In his third Ground for Relief, Petitioner asserts the Shelby County Prosecutor breached the plea agreement by not remaining silent as to sentencing.

The Warden asserts in the Return of Writ that this claim is procedurally defaulted because it was not presented to the trial court (Answer/Return of Writ, Doc. No. 9, at 14-20.) The Warden

relies on the following portion of the Shelby County Court of Appeals decision:

ASSIGNMENT OF ERROR NO. II

The Trial Court prejudicially erred in failing to allow the Defendant to withdraw his plea of no contest because the undisputed evidence was that the prosecutor promised to remain silent on the issue of sentencing in spite of his promise made a recommendation to the Judge's staff.

[*P33] In his second assignment of error, Langenkamp maintains that the prosecutor agreed to remain silent on the issue of sentencing as part of the plea agreement, and the prosecutor violated the plea agreement as evidenced by his statement on the record that he had made his recommendation to the Judge's staff. Langenkamp maintains that the prosecutor's breach of the plea agreement renders the plea a manifest injustice that requires a withdrawal. The State, on the other hand, argues that it did not breach the agreement because it did not make any sentencing recommendations.

[*P34] Langenkamp's argument lacks merit. Langenkamp did not raise this issue in either his motion to withdraw or his petition to vacate; and therefore, he has waived this issue for purpose of appeal. *State v. Gegia*, 157 Ohio App. 3d 112, 2004 Ohio 2124, 809 N.E.2d 673, P33 (motion to withdraw); *State v. Vincer*, 3d Dist. No. 9-03-32, 2003 Ohio 6703, P7 (petition to vacate); R.C. 2953.21(A)(4) ("* * * any ground for relief that is not so stated in the petition is waived.").

[*P35] Langenkamp's second assignment of error is, therefore, overruled.

*State v. Langenkamp*, 2008 Ohio 5308. 2008 Ohio App. LEXIS 4469 (Ohio App. 3rd Dist. Oct. 14, 2008).

However, the finding that this claim was not raised in the trial court was incorrect. Petitioner brought that error to the attention of the Court of Appeals by filing a motion for reconsideration (Return of Writ, Doc. No. 9, at Ex. 43). In denying the motion for reconsideration, the Court of Appeals made both a procedural and a substantive ruling. Procedurally, it noted that the claim that

the prosecutor had breached by not remaining silent had not been made in the body of either the

Ohio Rev. Code § 2953.21 petition or the motion to withdraw which were filed on September 19,

2007, but

> On December 28, 2007, Langenkamp filed a memorandum in support
> of his motion to withdraw and petition to vacate. There, for the first
> time, Langenkamp *mentioned*, in passing, that the prosecutor was to
> remain silent at sentencing. The memorandum, read as a whole,
> however, emphasized what was perceived by Langenkamp, and
> evidently the trial court, as the central issue in this case: the alleged
> promise of concurrent sentences. We are not persuaded that
> Langenkamp's *passing reference* to this potential issue in his
> memorandum of support properly presented it for the trial court's
> review. In fact, the parties only testified about this issue tangentially
> at the Crim. R. 32.1/petition to vacate hearing, and the trial court did
> not address the issue in its judgment entry. For these reasons, we are
> not persuaded that the issue was properly raised for the trial court's
> consideration and was, therefore, waived on appeal.

*State v. Langenkamp*, Case No. 17-08-04 (Ohio App. 3rd Dist. Nov. 20, 2008)(slip opinion at 2-

3)(copy attached to Return of Writ as Ex. 46)(emphasis sic).

The procedural default defense in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted his
> federal claims in state court pursuant to an adequate
> and independent state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can
> demonstrate cause of the default and actual prejudice
> as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will
> result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th

Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he

could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)*Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

Although the Warden has argued the applicability of the *Maupin* test in the Return (Doc. No. 9 at 18-19), the argument seems to be focused on the original decision of the Court of Appeals – that the claim was waived by never presenting it to the trial court -- rather than the decision on reconsideration – that the claim was waived by presenting it only in the memorandum in support, rather than in the original pleadings. The Court of Appeals does not cite any authority for its position, nor does the Warden do so. Conversely, Petitioner cites no authority for the opposing position, but merely proves the matter was brought up in the trial court, rather than proving that it was properly pleaded under Ohio law. The Court of Appeals opinion certainly satisfies the plain statement test in *Harris v. Reed,* 489 U.S. 255 (1989), but neither party has given this Court case law from which it could determine whether the rule relied upon is firmly established and consistently followed. Under these circumstances, the Court concludes the Warden has not established a procedural default defense on Ground Three.

The Shelby County Court of Appeals also decided this claim on the merits in the alternative.

> Even if we assume that the issue was preserved for appeal as Langenkamp argues, the outcome of the case would not change. When asked by the trial court if the State had any comments at sentencing, the prosecutor stated, "[m]ade our recommendations to your staff, Your Honor." (Aug. 20, 2007 Tr. at 70.) At the Crim R. 32.1/petition to vacate hearing, the prosecutor admitted that he probably made this statement at sentencing, but he testified: "that's the standard language we say rather than saying no comment cause it sounds better. We made no recommendation for sentencing whatsoever. We remained, you know, silent in the PSI." (Dec. 14, 2007 Tr. at 131-32). Furthermore, Langenkamp's counsel even appeared unconvinced that the prosecutor breached the sentencing agreement. . . . Under these circumstances, we are not persuaded that Langenkamp demonstrated a breach of the plea agreement. Accordingly, even if the issue would have been preserved for appeal, it would not have changed the outcome of the case.

*State v. Langenkamp*, No. 17-08-04 (Ohio App. 3rd Dist. Nov. 20, 2008)(slip opinion at 3-4)(copy

attached to Return of Writ as Ex. 46).

Prosecutor Bauer's testimony is unrebutted and Petitioner has not asked this Court to examine the PSI to see if it confirms his testimony. On the basis of the unrebutted testimony, the finding of the Court of Appeals that the prosecutor did in fact remain silent as to sentence deserved deference from this Court under 28 U.S.C. § 2254(d)(2). Since the prosecutor did not breach the plea agreement by making a sentencing recommendation, Ground Three is without merit.

**Conclusion**

Based on the foregoing analysis, it is hereby ordered that the Petition herein be dismissed with prejudice.

December 10, 2009.                                      s/ **Michael R. Merz**
                                                   United States Magistrate Judge