# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TOBY LANGENKAMP,

:

    Petitioner,

Case No. 3:09-cv-201

  -vs-

:

Magistrate Judge Michael R. Merz

WARDEN, Allen Correctional Institution,

:

    Respondent.

---

**DECISION AND ORDER DENYING RELIEF ON MOTION FOR RECONSIDERATION**

---

This habeas corpus case is before the Court on Petitioner's First Motion for Reconsideration (Doc. No. 16).

The Motion is expressly made under Fed. R. Civ. P. 59(e) which permits motions for reconsideration. *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350 (5th Cir. 1993). Among the grounds on which Rule 59 motions may be granted are the necessity to correct manifest injustice,[1] and it is on this ground that Petitioner relies.

The Shelby County Court of Appeals found as a matter of fact that Langenkamp's attorney[2] advised him he was guaranteed concurrent sentences so that he would serve no more than five years,

---

[1] The finding of a lack of manifest injustice on which the Shelby County Court of Appeals grounded its decision should not be confused with the manifest injustice requirement of Fed. R. Civ. P. 59. The Ohio Court had to decide whether there was a manifest injustice in refusing to permit Petitioner to withdraw his no contest plea. This Court must decide if there is a manifest injustice in allowing its denial of the writ of habeas corpus to stand.

[2] Langenkamp has been represented throughout both state and federal proceedings by attorney Daniel J. O'Brien, a very experienced criminal defense attorney.

-1-

that this representation was in error because there was no such guarantee, and that Langenkamp relied on this guarantee when he pled no contest. It concluded the reliance was not justified because Langenkamp represented to Judge Schmitt, both in the written plea agreement and in the Rule 11 plea colloquy, that there was no such guarantee and that no one associated with the case, including his attorney had made such a guarantee or was authorized to do so. To explain the discrepancy between his statements in court and what he truly believed, Langenkamp testified "I was reciting the script of what is used within the courts of the no promises and the – how that is abided by law." (Evidentiary Hearing, Return of Writ, Ex. 52, at 79.)

In its Decision, this Court upheld the Shelby County Court of Appeals conclusion that Langenkamp's reliance on his attorney was not justified because "[t]he purpose of the rule [Criminal Rule 11] would be completely defeated if a defendant could claim that it was all a sham, that he was playing a part and just following a script – saying whatever words were required to complete the process, whether or not they were true." (Decision and Order, Doc. No. 14, at 25.) The Court noted that most federal courts rejected such a claim without even taking evidence. *Id.* citing *United States v. Stewart,* 198 F.3d 984 (7th Cir. 1999); *Cunningham v. Diesseln,* 92 F.3d 1054 (10th Cir. 1996); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand"); and *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999).

Petitioner now says that taking this position creates a manifest injustice because

> This Court then considered that Mr. Langenkamp's testimony that he was merely responding in the oral colloquy as a "script" and as he was directed, was making the colloquy a sham. However, this Court's Decision does not consider that **Mr. Langenkamp had been advised by his own attorney that the oral colloquy and written plea agreement were in effect a sham**, i.e. not the real thing, having been

> overridden by the fiduciary representations of his own counsel, and
> **he acted only as directed by his own counsel.**

(Motion, Doc. No. 16, at 2, emphasis added.)

There is no direct evidence to support the statements of fact made in the highlighted language. Although Mr. Langenkamp and Mr. O'Brien testified in the state court post-conviction hearing before Judge Hein, neither testified to the effect of the highlighted language (see Return of Writ, Transcript, Ex. 52, at 522-542.) Once the matter reached this Court, Petitioner never sought an evidentiary hearing at which any direct testimony to that effect could have been elicited either from Mr. Langenkamp or from Mr. O'Brien.

There is, of course, circumstantial evidence to support the statements of fact made in the highlighted language. Langenkamp testified he was following a script and that he understood that is how things were done. *Id.* at 541. One could reasonably infer that he got his understanding of "how things were done" from his attorney. This Court accepts the truth of that inference on Mr. O'Brien's representation in the instant Motion that that is what happened, to wit, that Mr. O'Brien explained to Mr. Langenkamp that the plea colloquy was just a sham and that it was perfectly acceptable to tell Judge Schmitt, both in writing and orally, that there were no promises about sentence when Langenkamp was relying on what he believed was a promise by the judge of concurrent sentencing.

However, the Court refuses to consider Mr. O'Brien's representation that he told Langenkamp the plea colloquy was a sham because, assuming the fact is relevant, it is a fact which was known to Mr. O'Brien before judgment, but he never sought to present that fact in evidence before this Court. Indeed, he never made that representation prior to the time he filed the instant Motion. Of course a party is not entitled to relief under Fed. R. Civ. P. 59 to introduce evidence of

which the party was aware before judgment but failed to introduce.

Nor can the Court just disregard this rule about when evidence must be introduced, vacate the judgment, and set the case for an evidentiary hearing at which Messrs. Langenkamp and O'Brien could testify directly that O'Brien told Langenkamp the plea colloquy was a sham. A party may not introduce evidence at a habeas corpus evidentiary hearing if he failed to develop the evidence in the state court; indeed, the federal court is prohibited from holding an evidentiary hearing under those circumstances. 28 U.S.C. § 2254(e)(2). Both Mr. O'Brien and Mr. Langenkamp had an opportunity to testify to this effect in the hearing before Judge Hein, but their efforts were then focused on an attempt to prove that there was a plea agreement, presumably enforceable, for a maximum of five years incarceration.

Aside from the question whether the advice that the plea colloquy is a sham can be formally proved, this Court finds that fact irrelevant. Petitioner argues

> [W]here the defendant is merely following the "script" as directed by his lawyer, an officer of the Court, it cannot be fairly characterized as intentionally giving false answers. His assumption is, was and had to be, that the Judge is aware of, and in agreement with, the guaranteed maximum sentence. He is assuming, as he was told by his fiduciary, that his rote responses were necessary. Logically, Mr. Langenkamps [sic] pleas had to be either unintelligently given or based on ineffective assistance – "erroneous advice". It is seriously unfair to characterize [Langenkamp's] responses as intentional misstatements.[3]

(Motion, Doc. No. 16, at 2-3.)

---

[3] An intentional misstatement remains just that even if one was told to make it. Petitioner is not being accused of lying. What Petitioner did was to make statements contrary to fact – misstatements – at the direction of counsel. And he did it intentionally, i.e., because his lawyer told him to. There is no unfairness in labeling his statements to be what he claims they are: intentional misstatements made at the direction of counsel.

The erroneous advice considered by the Shelby County Court of Appeals was counsel's statement that there was an agreed sentence. That erroneous advice could well have been based on a good faith belief by Mr. O'Brien that there was an agreement for concurrent sentencing. The "erroneous advice" adverted to here – that it is permissible to give untrue responses to a judge's Rule 11 questions – goes far beyond that.

In denying relief, this Court cited *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999)where the Sixth Circuit considered a similar claim. Petitioner argues that *Ramos* is "not as clear on this point as the Court's Decision would lead one to believe." (Motion, Doc. No. 16, at 3.) In fact, *Ramos* is very closely analogous to this case. Petitioner argues:

> The Sixth Circuit in *Ramos* held: "The Court holds therefore that where Rule 11 procedures were fully adequate, <u>absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms</u>, at least when specifically asked to do so by the Court, a defendant's plain [sic; should be "plea"] agreement consists of the terms revealed in open court, ..."

*Id.* (emphasis *sic*)*,* quoting *Ramos*, 170 F.3d at 563. Actually, at that point in their opinion, the *Ramos* court is quoting from its earlier decision in *Baker v. United States*, 781 F. 2d 85, 90 (6th Cir. 1985). The fuller *Baker* quotation is pertinent:

> [W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry. Plea bargaining is an essential component of the administration of justice. Properly administered, it is to be encouraged. It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, a plea bargain itself is contractual in nature and subject to contract-law standards. To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at

least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court, and that therefore there was no breach of agreement in this case.

170 F.3d at 563. Ramos himself apparently received the same advice Langenkamp received here, to wit, that he was not supposed to reveal during the plea colloquy the off-the-record terms of the plea agreement. *Id.* at 564. The court held that was not a qualifying "extraordinary circumstance" even if it was ineffective assistance for counsel to recommend such concealment:

> Even under the assumption that Ramos has established deficient performance, he cannot establish that this alleged promise by Bradley caused him prejudice. This court has held that when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when the court specifically informed him that his counsel's advice was incorrect. See *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992), *cert. denied*, 507 U.S. 932, 122 L. Ed. 2d 702, 113 S. Ct. 1314 (1993). To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless. *Ibid*.

*Ramos*, 170 F.3d at 565. The court concluded "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Id.* (emphasis *sic*) That would include advice not to reveal the terms of the plea agreement. The *Ramos* court recognized the ethical problems involved in this situation, but concluded

> [T]he very serious nature of claims such as these mandates that a defendant must be bound to the answers he provides during a plea colloquy. Allowing petitioner to withdraw his plea would essentially put this court in the position of remedying a violation of an unethical off-the-record plea agreement and condoning the practice by defendants of providing untruthful responses to questions during plea colloquies. This we simply will not do.

*Id.* at 566.

As the *Ramos* court concluded, to accept Petitioner's position would completely undermine the plea bargaining process. This Court will not reward conduct which would render the plea colloquy a meaningless sham even if defense counsel told the defendant it was a sham.

The Motion to amend the judgment is denied.

January 11, 2010.

s/ **Michael R. Merz**<br>United States Magistrate Judge